IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| COOPER EQUIPMENT CO., BEARD HOLDINGS, LLC, *Plaintiffs,* vs. HITACHI CONSTRUCTION MACHINERY LOADERS OF AMERICA, INC., *Defendant.* | § § § § § § § § § § § § | 5:24-CV-00069-MA-RBF |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Micaela Alvarez:**

This Report and Recommendation concerns Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 161 ("Pl. MSJ"); *see also* Dkt. Nos. 176 ("HCMA Resp."), 198, 182 ("Pl. Reply"), and Defendant's Motion for Summary Judgment, Dkt. No. 163 ("HCMA MSJ"); *see also* Dkt. Nos. 197, 177 ("Pl. Resp."), 213, 184 ("HCMA Reply"). All pretrial matters in this action have been referred for resolution, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 91. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 161, should be **GRANTED IN PART and DENIED IN PART**. Defendant's Motion for Summary Judgment, Dkt. No. 163, should be **DENIED**.

**Factual and Procedural Background**

At issue here is the contractual relationship between a supplier and dealers of construction equipment. Defendant Hitachi Construction Machinery Americas, Inc. ("HCMA") is a construction-equipment manufacturer and supplier. Plaintiffs Beard Holdings, LLC d/b/a Beard Equipment Co. ("Beard"); Cooper Equipment Co. ("Cooper"); and B-C Equipment Sales, Inc. ("BCE") are construction-equipment dealers. On March 2, 2018, March 6, 2018, and January 8, 2020, HCMA entered into materially identical dealer agreements with Beard, Cooper, and BCE, respectively, for the sale of such equipment. HCMA MSJ at 1-2; Pl. MSJ ¶¶ 1-3; *see also* Dkt. Nos. 161-1 (Cooper Dealer Agreement), 161-2 (Beard Dealer Agreement), 161-3 (BCE Dealer Agreement) (collectively referred to as the "Dealer Agreements").[1] Broadly speaking, the Dealer Agreements appoint Plaintiffs as authorized retail dealers of Hitachi brand equipment and parts. HCMA MSJ at 2; Dkt. No. 88 ¶¶ 9, 10; Dkt. No. 89 ¶ 9.

**The Dealer Agreements.** Under the terms of the Dealer Agreements more specifically, "HCMA is an authorized distributor of certain equipment and accessories (the 'Equipment') . . . supplied by, among other companies, Hitachi Construction Machinery Ltd. (the 'Manufacturer')." *See* Dealer Agreements at 1. "Equipment," as therein defined, is a subset of HCMA's "Inventory." *See id.* The Dealer Agreements appoint Plaintiffs as "authorized retail dealer[s] to . . . sell and service the Inventory to end-users . . . ." *Id.* § 1.1. "[T]he Manufacturer [Hitachi Construction Machinery Ltd.] reserves the right, in its sole discretion, at any time and from time to time and without any prior notice to HCMA or the [Plaintiff] Dealer, to modify, discontinue, declare obsolete, add, adopt or change any item of Inventory . . . ." *Id.* § 1.5(a).

[1] These documents are also found in the exhibits to Defendant's Motion for Summary Judgment. *See* Dkt. No. 197 at 8 (Beard Dealer Agreement), at 120 (BCE Dealer Agreement), and 276 (Cooper Dealer Agreement).

As contracts do, the Dealer Agreements assign risk between the contractual signatories. Under the contracts' terms, Plaintiffs agreed to make payments for purchased products, maintain adequate inventory of such products, and satisfy certain product-sales volumes. Plaintiffs agreed also to "sell to end-users . . . the number of new items of Equipment necessary to equal or exceed the Dealer's Minimum Sales Responsibility" ("MSR"), as set by HCMA. *See* Dealer Agreements § 2.1(b). In consideration of those obligations imposed on Plaintiffs, the Dealer Agreements *inter alia* limited HCMA's available remedies in the event of a breach by the Plaintiff Dealers. For example, under § 2.1(b), and "in the event that the [Plaintiff] Dealer fails to achieve its MSR," the Dealer Agreements limited HCMA's remedy "to either (i) redistribute a portion or portions of the [Plaintiff] Dealer's Sales and Service Area or (ii) terminate this Agreement." *Id.* § 2.1(b). But in the event of a Plaintiff dealer's breach of § 2.1(b), the dealer "shall not be liable to HCMA for any damages . . . ." *Id.*

The Dealer Agreements also specified when, how, and under what parameters the parties could terminate their relationship. Specifically, the Dealer Agreements permitted termination "[b]y either party for any reason and without cause upon written notice to the other party received not less than ninety (90) days prior to the effective date of the termination;" *id.* § 3.1(c), or "[b]y either party at any time upon the occurrence of any one or more . . . events of default," *id.* § 3.1(d). An event of default, under the Dealer Agreements, includes *inter alia* the "failure of the other party to perform any obligation to or covenant of the other party under this Agreement or under any and all other related agreements, now, previously or hereafter entered into by the Dealer with HCMA, including but not limited to purchase orders for Inventory, and to cure such default within ten (10) days after receiving notice from the aggrieved party that sets forth such nonperformance." *Id.* § 3.1(d)(i).

The Dealer Agreements also set forth agreed permissible forms of notice. They provided, for example, that a notice "shall be deemed sufficiently given if it is delivered by hand or sent by prepaid mail, registered or certified, return receipt requested . . . if sent to the address or fax number and to the attention of the individual noted in the signatory provision . . . in accordance with this [§] 4.4." *Id.* § 4.4. The Dealer Agreements then provided the addresses of HCMA and Plaintiffs for purposes of delivering such notice. *Id.* § 4.4(a), (b).

**The Dealer Act.** All agree that the relationships between Plaintiffs and HCMA are also subject to the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act (the "Dealer Act" or the "Act"). *See* Tex. Bus. & Comm. Code § 57.001. The Dealer Act is a Texas law that regulates contractual relationships between suppliers and dealers of certain covered equipment. *See id.* §§ 57.001-57.402. The Act sets up a regime under which certain rights can be invoked under the terms of a governing dealer agreement, the provisions of the Act, or both. It provides, in pertinent part, that

> The provisions of this chapter are supplemental to any dealer agreement between the dealer and the supplier that provides the dealer with greater protection. A dealer may elect to pursue its contract remedy or the remedy provided by state law, or both. An election by the dealer to pursue those remedies does not bar the dealer's right to exercise any other remedies that may be granted at law or in equity.

*Id.* § 57.402.

The Dealer Act is a one-way rachet; the protections favor Texas dealers, who frequently wield less bargaining power than their suppliers. *See Fire Prot. Serv., Inc. v. Survitec Survival Prods., Inc.*, 153 F.4th 439, 444 (5th Cir. 2025). For example, under the just-quoted provision, it is apparently only "[a] dealer [that] may elect to pursue its contract remedy or the remedy provided by state law, or both." Tex. Bus. & Comm. Code § 57.402. And under the Dealer Act, a dealer need only "give the supplier at least 30 days' prior written notice of termination." *Id.* § 57.152. But a

supplier, like Defendant here, "may not terminate a dealer agreement without good cause," where such statutory good cause is defined in § 57.154 of the Act. *Id.* § 57.153.

Statutory good cause for a supplier's termination exists, for example, when the dealer:

> (1) fails to substantially comply with essential and reasonable requirements imposed on the dealer under the terms of the dealer agreement, provided that such requirements are not different from requirements imposed on other similarly situated dealers either by their terms or by the manner in which they are enforced;
>
> . . . .
>
> (7) defaulted under the terms of . . . [a] security agreement between the dealer and the supplier; [or]
>
> . . . .
>
> (12) has consistently failed to meet and maintain the supplier's requirements for reasonable standards and performance objectives, so long as the supplier has provided the dealer with reasonable standards and performance objectives based on the supplier's experience in other comparable market areas.

*Id.* § 57.154 (a)(1), (a)(7), (a)(12).

Finally, parties subject to the Dealer Act can agree to supplement the protections of the Dealer Act via their contractual agreements but they cannot waive the Act's protections:

> An attempted waiver of a provision of this chapter or of the application of this chapter is void.

Tex. Bus. & Comm. Code § 57.003.

**The Dispute.** HCMA terminated its Dealer Agreements with Plaintiffs in September of 2023. The parties dispute whether those terminations were justified or violated the Dealer Agreements, the Dealer Act, both, or neither. Also at issue is whether HCMA breached the Dealer Agreements by failing to allow Plaintiffs to sell excavators when the Dealer Agreements were in effect.

***Issues with Contractual Compliance.*** It's undisputed that throughout their contractual relationships with HCMA, the Plaintiff Dealers each repeatedly failed to make timely

payments on various invoices for a period of years. *See* HCMA MSJ ¶¶ 9-17, 19-28, 30-36. HCMA sent emails to Plaintiffs concerning at least some of these late invoices during the relevant period. The parties don't dispute that all invoices were ultimately paid in full. It appears that Beard paid its outstanding balance on August 30, 2021, HCMA MSJ ¶ 17, Cooper paid its outstanding balance on September 1, 2021, *id.* ¶ 37, and BCE paid its outstanding balance on May 11, 2022, *id.* ¶ 28. *See also* Pl. Resp. ¶ 43 (citing HCMA MSJ ¶¶ 17, 28, 37; Dkt. No. 213 at 203:15-204:22).

Nonetheless, on March 10, 2023, HCMA sent each Plaintiff a materially identical written termination notice, indicating that HCMA was terminating its Dealer Agreement with each Plaintiff Dealer. HCMA MSJ at 2; *id.* ¶ 38; Pl. Resp. ¶ 38; *see also* Pl. MSJ ¶ 7; Dkt. Nos. 161-4 ("Cooper Termination Notice"), 161-5 ("Beard Termination Notice"), 161-6 ("BCE Termination Notice") (collectively referred to as "Termination Notices").[2] With respect to Cooper and BCE, the Termination Notices stated that the Dealer Agreements would terminate on September 13, 2023—187 days from the date of these notices. Pl. MSJ ¶ 10; HCMA Resp. ¶¶ 44, 45; Cooper Termination Notice at 2; BCE Termination Notice at 2. With respect to Beard, the termination notice provided that its Dealer Agreement would terminate on September 11, 2023—185 days from the date of the notice. Pl. MSJ ¶ 11; HCMA Resp. ¶¶ 44, 46; Beard Termination Notice at 2. Ultimately, Beard's Dealer Agreement was terminated on September 11, 2023; and Cooper and BCE's respective Dealer Agreements were terminated on September 13, 2023. Pl. MSJ ¶¶ 12, 13; HCMA Resp. ¶¶ 45, 46.

***Excavators.*** It's undisputed that when Plaintiffs entered into the Dealer Agreements with HCMA, HCMA's product line included only wheel loaders. HCMA MSJ ¶ 1; Pl. Resp. ¶ 1.

---

[2] These notices are also found in the separately filed exhibits to HCMA's Motion for Summary Judgment. *See* Dkt. No. 197.

At some point thereafter, HCMA started to distribute excavators. Plaintiffs allege HCMA should have allowed them to sell excavators but refused.

**At Issue Now.** Plaintiffs assert the following three claims for relief: (1) statutory violations of the Dealer Act in connection with HCMA's termination of each Plaintiff Dealer without statutory good cause; (2) breach of contract for wrongful termination under the terms of the respective Dealer Agreements; and (3) breach of contract in connection with HCMA's failure to allow Plaintiffs to sell excavators pursuant to the Dealer Agreements. *See* Dkt. Nos. 88, 89 (2d Am. Compls.).

HCMA asserts counterclaims against each Plaintiff for breach of contract based on each Plaintiff's alleged failure to maintain the minimum annual market share required under each respective Dealer Agreement. *See* Dkt. Nos. 93, 94.

**The Pending Motions.** Plaintiffs filed a Motion for Partial Summary Judgment. *See* Pl. MSJ. HCMA filed a Response, *see* HCMA Resp., and Plaintiffs filed a Reply, *see* Pl. Reply. The exhibits to HCMA's Response to Plaintiffs' Motion for Partial Summary Judgment were separately filed. *See* Dkt. No. 198.

Defendant HCMA also filed a Motion for Summary Judgment. *See* HCMA MSJ. The exhibits to HCMA's Motion were filed separately. *See* Dkt. No. 197. Plaintiffs filed a Response to the Motion, *see* Pl. Resp., and HCMA filed a Reply, *see* HCMA Reply. The exhibits to Plaintiffs' Response to Defendant's Motion for Summary Judgment were separately filed. *See* Dkt. No. 213.

## Analysis

For the reasons set forth herein, HCMA's Motion for Summary Judgment, Dkt. No. 163, should be **DENIED**, and Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 161, should be **GRANTED IN PART and DENIED IN PART** as discussed in detail below.

### A. The Court Applies Familiar Standards when Evaluating the Motions for Summary Judgment.

The Court grants "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing, *inter alia*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citation omitted). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous., Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (citations omitted). Neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little*, 37 F.3d at 1075 (citation and internal quotation marks omitted).

All factual disputes are resolved in the nonmoving party's favor. *Little*, 37 F.3d at 1075. But the Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis removed) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). And the Court will grant summary judgment "in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in

favor of the nonmovant.'" *Id*. at 1075-76 (emphasis removed) (quoting *Armstrong v. City of Dall.*, 997 F.2d 62 (5th Cir. 1993)).

To conclude that there are no genuine issues of material fact, a court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In making this determination, a court should review all the evidence in the record, "giv[ing] credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation omitted). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id*. at 150 (citations omitted), and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 180-81 (5th Cir. 2009) (citing, *inter alia*, *Liberty Lobby*, 477 U.S. at 250).

### B. Neither Side is Entitled to Summary Judgment on Plaintiffs' Dealer Act Claims.

There are four elements to a claim under the Dealer Act: "(1) there [is] a covered dealer agreement; (2) that agreement was terminated; (3) termination occurred without [statutory] good cause; and (4) damages resulted." *See Hitachi Constr. Mach. Ams. Inc. v. Amarillo Mach. Co.*, 2:25-CV-00155-Z-BV, 2026 WL 1747874, at *4 (N.D. Tex. June 17, 2026). There's no dispute that the Dealer Agreements at issue are covered by the Dealer Act and that HCMA terminated the Dealer Agreements. Both sides move for summary judgment in connection with Plaintiffs' claims under the Dealer Act and on the issue of statutory good cause for HCMA's termination of the Dealer Agreements.

As discussed further, neither party is entitled to summary judgment on Plaintiffs' Dealer Act claims. But first, the Court must discuss burdens under the Dealer Act.

**1.** *Under the Dealer Act, Plaintiffs must show HCMA lacked statutory good cause for termination*. The Dealer Act is silent on who has the burden to show good cause for termination. This Court looks to Texas law to guide its interpretation of the Dealer Act. *See Benavides v. Mut. Life Ins. Co.*, 516 F.2d 393, 400 (5th Cir. 1975) ("The question of who sustains the burden of proof is substantive and in a diversity case is therefore controlled by state law." (citation omitted)). Typically, "[a] civil litigant who asserts an affirmative claim for relief has the burden to persuade the finder of fact of the existence of each element of his cause of action." *TRO-X, L.P. v. Anadarko Petrol. Corp.,* 548 S.W.3d 458, 464-65 (Tex. 2018) (citation and internal quotation marks omitted). As mentioned, an element of a claim under the Dealer Act is the absence of good cause for a termination. *See, e.g.*, *Hitachi Constr. Mach. Am. Inc.*, 2:25-CV-00155-Z-BV, 2026 WL 1747874, at *4. Accordingly, it is Plaintiffs that must show an absence of good cause in connection with their claims under the Act.

This conclusion isn't shifted by the Dealer Act's purpose. The Court recognizes that the Texas Legislature passed the Dealer Act to protect dealers in supplier/dealer relationships. *See Fire Prot. Serv., Inc.*, 153 F.4th at 444-45 (stating that it was the "Legislature's intent that the [Dealer] Act apply broadly to counteract 'the superior bargaining power of' manufacturers" (citations omitted)). But if the Texas Legislature intended to sit on the dealers' side of the scale instead of just resting a thumb on it, the Legislature could have explicitly shifted the burden to suppliers to show good cause by plainly saying as much in the statute; it did not. *See Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) ("[W]e presume the Legislature chose statutory language deliberately and purposefully, . . . and that it likewise excluded language deliberately and purposefully."

(internal citations and quotation marks omitted)). Indeed, the Texas Legislature has expressly shifted burdens like this in at least one analogous context. *See e.g.*, Tex. Occ. Code § 2301.453(g) (expressly placing the burden of proof to show good cause on the party seeking to terminate or discontinue a dealer franchise agreement). And yet the Dealer Act is silent in that respect. Accordingly, the burden of showing statutory good cause is offensive; Plaintiffs must carry their burden to show that HMCA lacked good cause to terminate the Dealer Agreements.[3]

**2.** *HCMA isn't entitled to summary judgment on Plaintiffs' Dealer Act claims*. Seeking summary judgment on Plaintiffs' statutory claims, HCMA urges that Plaintiffs cannot establish the absence of good cause for termination. Section 57.154(a)(7) of the Dealer Act, says HCMA, provides that a supplier like HCMA has statutory good cause to terminate when "(7) the dealer *has defaulted* under the terms of . . . [a] security agreement between the dealer and the supplier." Tex. Bus. & Comm. Code § 57.154(a)(7) (emphasis added). Thus, HCMA's argument continues, Plaintiffs' respective breaches of their security agreements, due to late invoice payments, provided the requisite statutory good cause. HCMA's argument fails.

To begin, it's undisputed that each Plaintiff cured its overdue invoices by paying them in full many months before HCMA's September 2023 termination. HCMA accepted these payments and, it appears, continued its relationship with each Plaintiff in the months following the tardy payments. *See e.g.*, Dkt. No. 197 at 104, 111, 344 (identifying invoices issued following several tardy payments); *see also e.g.*, *id.* at 80-81, 83-84, 188-193, 205-07, 214-15, 334-35 (listing

[3] Plaintiffs in their Response to HCMA's Motion for Summary Judgment state that the issue of whether Plaintiffs bear the burden to show the absence of statutory good cause is "irrelevant as the relevant burden [in summary judgment posture] is on HCMA to demonstrate that there are no issues of fact and it is entitled to judgment as a matter of law as to good cause . . . ." *See* Pl. Resp. at 9 n.1 But as discussed further herein, summary judgment burdens depend on who has the burden of proof at trial. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

invoice details). Beard paid its outstanding balance on August 30, 2021, which is over two years prior to termination. *See* HCMA MSJ ¶ 17; *see also* Pl. Resp. ¶¶ 17, 43. Cooper paid its outstanding balance on September 1, 2021, again approximately two years prior to termination. *See* HCMA MSJ ¶ 37; *see also* Pl. Resp. ¶¶ 37, 43. And BCE paid its outstanding balance on May 11, 2022, which is well over a year before termination. *See* HCMA MSJ ¶ 28; *see also* Pl. Resp. ¶¶ 28, 43. HCMA acknowledges that these payments were made but emphasizes that § 57.154(a)(7)'s text talks in terms of a dealer that "has defaulted," which is a phrase HCMA reads as providing a continuing right to terminate for good cause following even a cured late payment. *See* HCMA MSJ at 15-16.

HCMA's argument is premised on a flawed reading of § 57.154(a)(7). To repeat, § 57.154(a)(7) provides that there is good cause when "the dealer *has defaulted* under the terms of any . . . security agreement between the dealer and the supplier." Tex. Bus. & Comm. Code § 57.154(a)(7) (emphasis added). The use of "has defaulted" as opposed to "had defaulted" or merely "defaulted" is significant, but not for the reason HCMA cites. "Has defaulted" is the present perfect tense, it involves the auxiliary verb "has" plus the past participle "defaulted." *See* The Chicago Manual of Style § 5.136 (18th ed. 2024); *see also Hewitt v. United States*, 606 US 419 (2025). This tense typically is used to reflect an action that occurred in the past and continues. *See* The Chicago Manual of Style § 5.136 ("The present perfect is distinguished from the past tense because it refers to . . . a past action that comes up to and touches the present {I **have played** cards for the last eighteen hours}." (emphasis in original)). Contrast that with the simple past tense, "defaulted," which reflects a completed action in the past such that the action or event is over, resolved, *see id.*; and the past-perfect tense, "had defaulted," which refers to an "act, state, or condition that was completed before another . . . past time or past action," *see id.* § 5.137. *See also*

R. Huddleston & G. Pullum, The Cambridge Grammar of the English Language 143 (2002). The upshot is that use of “has defaulted” in lieu of “defaulted” or even “had defaulted” reflects, as a matter of grammar, that the default in question ought to be ongoing. Rather than supporting a reading of the statute in which any default—whether cured or not—could support a good-cause termination, the phrase “has defaulted” reflects that a default capable of supporting termination for good cause should be continuing in effect. A default that has been cured, in other words, cannot suffice.

HCMA’s reading of § 57.154(a)(7) is also out of step with the Dealer Act’s context and purpose. It makes little sense that a dealer’s past, but long ago cured, payment default continues like a sword of Damocles to hang over the dealer as eternal good cause for termination under a statute designed uniquely to protect dealers. HCMA’s reading would do significant damage to the Dealer Act’s carefully crafted protections.

As for case law, the parties have not cited, and the Court has not found, any Texas case addressing this issue. The Court must make an “*Erie* guess” and “determine as best [it] can” what the Texas Supreme Court would decide. *See Harris Cnty. v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015) (citation and internal quotation marks omitted). In making that guess, the Court is guided foremost by the aforementioned principles of grammar and plain-text interpretation.

Ultimately, HCMA fails to meet its burden and is not entitled to summary judgment on the Dealer Act claims because, at a minimum, there is a fact question as to whether the past late payments, now long cured, could operate as statutory good cause under § 57.154(a)(7) for termination of the Dealer Agreements.

**3.** *Plaintiffs are not entitled to partial summary judgment in connection with their Dealer Act claims*. In seeking partial summary judgment, Plaintiffs urge the Court to hold as

a matter of law that HCMA cannot rely on the provisions of § 57.154(a)(12) to show statutory good cause for terminating the Dealer Agreements. Pl. MSJ at 8-9. Like § 57.154(a)(7), discussed above, § 57.154(a)(12) provides one of a list of statutory bases for "good cause." This provision provides that good cause is present when "the dealer has consistently failed to meet and maintain the supplier's requirements for reasonable standards and performance objectives, so long as the supplier has provided the dealer with reasonable standards and performance objectives based on the supplier's experience in other comparable market areas." Tex. Bus. & Comm. Code § 57.154(a)(12).

The Termination Notices sent by HCMA to Plaintiffs provided a list of ten defaults to justify HCMA's termination of the Dealer Agreements. *See* Termination Notices at 1. Among the ten grounds provided, HCMA listed that Plaintiffs failed to meet their market-share requirements and maintain adequate sales volumes. *See* Termination Notices at 1, §§ 5, 6. Plaintiffs urge that § 57.154(a)(12) cannot support good cause for their termination because § 57.154(a)(12) can only be invoked when the dealer is given two years notice before the effective date of termination. *See* Tex. Bus. & Comm. Code § 57.155(b); *see also* Pl. MSJ at 8-9.

Recall, however, that Plaintiffs bear the burden to show an absence of good cause as an element of their Dealer Act claims. Yet, it's not clear that Plaintiffs apprehend this burden as theirs to carry. *See* Pl. MSJ at 7 ("Plaintiffs are not required to negate the elements of HCMA's claims but may satisfy their burden by demonstrating the absence of facts supporting an element of HCMA's claims." (citation omitted)). And it's not clear from Plaintiffs' briefing whether they request a partial summary judgment as to the applicability of § 57.154(a)(12) as a possible counter to HCMA's assertion of good cause in its defense to Plaintiffs' Dealer Act claims, or if Plaintiffs

somehow seek summary judgment in their favor as to liability on the Dealer Act claims because of this § 57.154(a)(12) argument.

At best, an argument along these lines could eliminate one possible defense HCMA might raise to Plaintiffs' Dealer Act claims, which require Plaintiffs to show an absence of good cause. Plaintiffs' argument cannot demonstrate entitlement to judgment on their claims under the Act because the argument, by itself, cannot establish an absence of good cause as a matter of law. A ruling for Plaintiffs that they are entitled to prevail on their Dealer Act claims is therefore not on the summary judgment menu. Because Plaintiffs fail to clearly brief the issue as though they seek merely a finding on a discrete issue, the Court declines to address it further. The issue can be re-raised at trial or another appropriate opportunity. The Court cannot conclude, based on the briefing before it, that Plaintiffs are entitled to summary judgment on their Dealer Act claims or any discrete § 57.154(a)(12) issue.

### C. With Respect to Breach of Contract, HCMA's Motion for Summary Judgment Should be Denied and Plaintiffs' Motion for Partial Summary Judgment Should Be Granted.

The parties each assert breach-of-contract claims. Before addressing those claims and the summary judgment motions' arguments concerning them, the Court addresses briefly the confusion reflected in the briefing about how contract claims ought to interact with claims under the Dealer Act. For its part, the Dealer Act states that its provisions are "supplemental to any dealer agreement . . . that provides the dealer with greater protection." Tex. Bus. & Comm. Code § 57.402. Accordingly, a dealer may "elect to pursue its contract remedy or the remedy provided by state law, or both." *Id.* Moreover, the Dealer Act provides that "[a]n attempted waiver of a provision of this chapter or of the application of this chapter is void." *Id.* § 57.003. The Court notes that the parties advocate wildly divergent positions when, in connection with contract claims, Dealer Act protections conflict with provisions of the Dealer Agreements.

In HCMA's view, parties can mutually agree to a dealer-supplier relationship in which a dealer enjoys lesser contractual protections than those afforded by the Dealer Act. *See* HCMA Reply at 4; *see also generally*, HCMA MSJ. When a dealer sues based on the Dealer Act, says HCMA, statutory protections apply to those claims. But when a dealer sues under the contract, HCMA continues, the contract terms apply regardless of the Dealer Act's protections. This argument takes issue with the meaning of the Dealer Acts provision addressing "waiver of a provision of [the Dealer Act] or of the application of [the Act]" when parties engage in arms-length negotiations. *See* Tex. Bus. & Comm. Code § 57.003.

In sharp contrast, Plaintiffs interpret § 57.003's anti-waiver language to provide that the Dealer Act effectively voids any discrete contract terms that contradict or are less favorable than Dealer Act protections, even when the claim at issue sounds in contract. *See* Pl. Resp. ¶ 2 (citing Tex. Bus. & Comm. Code § 57.003). The upshot of Plaintiffs' view is that the arms-length contractual relationships embodied by the Dealer Agreements are subject to the Dealer Act, and those negotiated agreements are effectively re-written whenever contract provisions diverge from the Dealer Act in a manner unfavorable to the dealer.

The Court flags this issue here for the District Judge but does not resolve it because the issue doesn't affect the Court's summary judgment recommendations on the contract claims.

**2.** *HCMA isn't entitled to summary judgment on the breach-of-contract claims for termination of the Dealer Agreements.* As the first of two breach predicates, Plaintiffs allege breach of the Dealer Agreements due to wrongful termination. HCMA justified termination, as a contractual matter, by invoking the contracts' provisions authorizing termination. But these provisions, all agree, require the terminating party to provide "written notice" before termination. *See* Dealer Agreements §§ 3.1(c), 3.1(d)(i); *see also id.* § 4.4. Thus, Plaintiffs allege wrongful

termination. HMCA counters that termination was authorized under the contracts for no cause, *see id.* § 3.1(c), or alternatively for a number of purported defaults, *see id.* § 3.1(d)(i). Plaintiffs then counter *inter alia* that those alleged defaults, per contract, required adequate notice before they could justify termination—assuming *arguendo* the contract notice provisions apply instead of any contrary Dealer Act provisions. Because there is at least a triable fact question concerning whether adequate notice of default was provided under the contracts, summary judgment for HCMA on Plaintiffs' contract claims isn't warranted.

Section 3.1(c) of the Dealer Agreements states that termination was permitted "[b]y either party for any reason and without cause upon written notice to the other party received not less than [90] days prior to the effective date of the termination[.]" *See* Dealer Agreements § 3.1(c). And § 3.1(d)(i) provided that termination was permitted "[b]y either party at any time upon the occurrence of [an] event[] of default" which includes "failure . . . to perform . . . under [the Dealer Agreements] or under any and all other related agreements" and failure "to cure such default within [10] days[.]" *Id.* § 3.1(d). Section 3.1(d)(i) specifically required that the notice must "set[] forth [the] nonperformance" alleged. *Id.* § 3.1(d). The Dealer Agreements provided guidance as to the substance, form, and method of notice when notice was required:

> Any notice required or permitted to be given under this Agreement, unless otherwise indicated, shall be deemed sufficiently given if it is delivered by hand or sent by prepaid mail, registered or certified, return receipt requested, by a nationally recognized overnight courier, or facsimile transmission (with confirming copy sent first class mail) if sent to the address or fax number and to the attention of the individual noted in the signatory provision hereof addressed to the parties at the address set forth below, or at such other address as shall be specified hereafter in writing by any party hereto to the other party in accordance with this Section 4.4.

*See* Dealer Agreements § 4.4. HCMA provided notice to Plaintiffs in either email for written form.

But neither the emails concerning Plaintiffs' nonpayment nor the written Notices of Termination provided sufficient notice as a matter of law. Under Texas law, "substantial

compliance is the appropriate standard when evaluating whether a party complied with a contractual notice condition." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 405 (Tex. 2022). It's a "general principle of Texas law" that "a party's minor deviations from a contractual notice condition that do not severely impair the purpose underlying that condition and cause no prejudice do not and should not deprive that party of the benefit of its bargain." *Id.* at 406 (citation omitted). And where state substantive law requires substantial compliance, "whether a party has substantially complied with the terms of the contract presents a pure question of fact that the trier of fact alone may decide." *Turrill v. Life Ins. Co.*, 753 F.2d 1322, 1326 (5th Cir. 1985).

The email notices weren't alone sufficient as a matter of law under the terms of the Dealer Agreements, and the Court does not take HCMA as arguing that they were. HCMA instead argues substantial compliance. But whether email notices substantially complied with the contractual notice requirements is a disputed question of fact. The emails weren't delivered to the correct person, nor were they "delivered by hand or sent by prepaid mail, registered or certified, return receipt requested, by a nationally recognized overnight courier, or facsimile transmission." *See* Dealer Agreements § 4.4. The emails also didn't as a matter of law necessarily contain "sufficient information" for Plaintiffs to "reasonably conclude that [§ 3.1(d)] was at play and that the [period to cure] was ticking." *See James Constr.*, 650 S.W.3d at 406. And notifying Plaintiffs of late payments, doesn't necessarily equate to triggering § 3.1(d). *See e.g.*, *id.* The emails didn't use the word "default," nor did they note any specific non-performance under the Dealer Agreement or Security Agreement, and they also didn't demand that Plaintiffs cure nonperformance within 10 days.

There's also a disputed fact issue concerning whether the contents of the boilerplate written, mailed Termination Notices complied with or substantially complied with the contractual

notice requirements.[4] HCMA now invokes the no-cause termination provision in the Dealer Agreements, which is at § 3.1(c). But this provision requires "written notice to the other party received not less than [90] days prior to the effective date of the termination." *See* Dealer Agreements § 3.1(c). And while these Termination Notices each listed 10 identical, boilerplate alleged defaults, there's no mention of the no-cause termination provision in any such Notice. *See* Termination Notices at 1. Moreover, § 3.1(c) requires no justification for termination. So, HCMA's written Termination Notices potentially did more to confuse matters than provide notice. There can be no matter-of-law argument that these written Termination Notices provided notice of a no-cause termination because they only listed for-cause termination reasons. Moreover, the Notices invited Plaintiffs to cure the alleged defaults "to the extent possible and required under applicable law(s)." *See* Termination Notices at 2. If no-cause termination was on the table, that was another red herring, inviting Plaintiffs to expend time and resources in a fool's errand aimed at curing the laundry list of defaults even as they would be subject to no-cause termination. Notice, to be effective as a matter of law, surely would need to inform of the *actual* basis for termination and *accurately* state the terminating party's position.

In conclusion, whether the emails and Termination Notices substantially complied in form and substance with the contractual notice provisions involves disputed questions of fact not properly resolved on summary judgment. *Austin Shuler's Best Lawns, Inc. v. M. Shapiro Mgmt. Co. LLC*, 1:23-CV-01394-RP, 2025 WL 1952090, at *8 (W.D. Tex. July 7, 2025) (noting substantial compliance is a question of fact).

---

[4] It's therefore not necessary to resolve the issue of whether § 3.1(c)—the Dealer Agreement term allowing termination by any party without cause—is rendered void by the Dealer Act's nonwaiver provision, *see* Tex. Bus. & Comm. Code § 57.003.

**3.** *HCMA isn't entitled to summary judgment on Plaintiffs' breach claim premised on excavator sales.* Plaintiffs' second theory of contractual breach involves HCMA's refusal to allow Plaintiffs to sell excavators once they were available starting in 2022. *See* Pl. Resp. at 20. There's no dispute that when the parties entered into the Dealer Agreements, HCMA distributed only wheel loaders, not excavators. HCMA MSJ at 18; Pl. Resp. at 20.

The terms of the Dealer Agreements broadly appointed Plaintiffs as dealers of "Inventory," which as defined includes *inter alia* "Equipment." *See* Dealer Agreements §§ 1.1-1.4; *see id.* at 1. "Equipment" was defined broadly as all "equipment and accessories" for which "HCMA is an authorized distributor." *See id.* at 1. And while the Dealer Agreements didn't nominally list "excavators" as "Inventory," the Dealer Agreements contemplated that the Manufacturer, Hitachi Manufacturing Ltd., "in its sole discretion, at any time . . . and without any prior notice to HCMA or the Dealer, . . . [may] add, adopt or change any item of Inventory." *Id*. § 1.5(a). In contracting with each other, the parties thus contemplated that Hitachi Manufacturing Ltd. would have the discretion to add items to the Inventory. Indeed, Hitachi Manufacturing Ltd., the Dealer Agreements contemplated, could exercise that discretion without any notice to HCMA or the Plaintiff Dealers. *See id*. § 1.5(a).

Returning to HCMA's request for summary judgment on this breach claim asserted by Plaintiffs, HCMA hasn't shown that excavators were excluded from the Dealer Agreements' "Inventory." And more to the point with respect to summary judgment burdens, Plaintiffs show at least a fact question regarding their entitlement under the contracts to sell excavators, once excavators were later added to the "Inventory" in 2022. HCMA is therefore not entitled to summary judgment on this contract-breach claim by Plaintiffs.

**4.** *The Court need not address HCMA's argument concerning Plaintiffs' lost profits*. HCMA argues that Plaintiffs can't prove lost-profit damages—the only damages Plaintiffs seek—because the relevant testimony from the expert designated by Plaintiffs on the issue should be excluded. *See* HCMA MSJ at 19-20. Because the District Judge will take up the Motion to Exclude Plaintiffs' Expert, Dkt. No. 158, at or before the bench trial, this issue is best reserved for the District Judge. Accordingly, the issue of lost profits as damages in HCMA's Motion should denied without prejudice to re-urging at a latter juncture.

**5.** *Plaintiffs are entitled to summary judgment with respect to HCMA's breach of contract counterclaim premised on "market share" obligations.* HCMA's counterclaim alleges a breach by Plaintiffs of their MSR or "market share" obligations set forth in § 2.1(b) of the Dealer Agreements. *See* Dkt. Nos. 93 ¶¶ 86-94, 94 ¶¶ 82-88. The Parties don't dispute that HCMA waived its right to recover monetary damages based on an alleged breach of § 2.1(b). And the plain, unambiguous language of § 2.1(b) provides that "[t]he Dealer shall not be liable to HCMA for any damages (however arising or denominated) for its breach of this Section 2.1(b)." *See* Dealer Agreements § 2.1(b). Section § 2.1(b) therefore plainly bars HCMA from recovering monetary damages in the event Plaintiffs breached their MSR obligations. *See id.* § 2.1(b); *see also* HCMA Resp. at 19. Because a showing of damages suffered due to a contractual breach is a necessary element of a contract claim, HCMA's counterclaim premised on § 2.1(b) necessarily fails. *See, e.g.*, *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465-66 (5th Cir. 2003) (upholding a district court's grant of summary judgment for breach-of-contract claim under Texas law in part due to no showing of damages by the plaintiff).

Finally, the Court need not engage with arguments in HCMA's Response taking issue with Plaintiffs' characterization of the counterclaim as pleading breach of contract only pursuant to

§ 2.1(b). Whether HMCA sufficiently pleaded a breach theory with some other predicate is not for this Court to decide where the motion for summary judgment at issue attacks only a claim in reference to § 2.1(b). The Court notes only that HCMA ought to have pleaded all breach theories with particularity in its counterclaim. The failure to do so typically is not correctable for the first time in response to a pending motion for summary judgment. *See, e.g.*, *DeFranceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. May 17, 2012) (noting,"[d]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment"). The parties, no doubt, will address this issue with the District Judge at the Final Pretrial Conference or some other appropriate juncture, and she will determine what breach theories have been or may be pleaded.

Plaintiffs are entitled to summary judgment with respect to HCMA's counterclaim premised on an alleged breach of § 2.1(b).

**Conclusion and Recommendation**

For the reasons discussed above, **IT IS RECOMMENDED** Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 161, should be **GRANTED IN PART and DENIED IN PART**. Specifically, the Motion should be **GRANTED** with respect to HCMA's Counterclaim premised on a breach of § 2.1(b) of the Dealer Agreements, and HCMA's Counterclaim in that respect should be dismissed. Plaintiffs' Motion should otherwise be **DENIED**, as provided herein.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion for Summary Judgment, Dkt. No. 163, should be **DENIED**, as provided herein.

The pending Motion to Exclude, Dkt. No. 158, and Motions in Limine, Dkt. Nos. 202-205, will be considered by the District Judge at or before the bench trial. Accordingly,

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, **IT IS ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* W.D. Tex. Loc. Rule CV-7. The objecting party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 20th day of July, 2026.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE