**FILED**
August 17, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: CM
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| COOPER EQUIPMENT CO. AND BEARD HOLDINGS, LLC, | § | |
| Plaintiffs, | § | |
| B-C EQUIPMENT SALES, INC., | § | |
| Intervenor Plaintiff, | § | |
| v. | § | 5:24-CV-00069-MA |
| HITACHI CONSTRUCTION MACHINERY AMERICAS, INC., | § | |
| Defendant. | § | |

**OPINION AND ORDER**

The Court now considers United States Magistrate Judge Richard B. Farrer's Report and Recommendation in the above-numbered and styled case, filed July 20, 2026.[1]

**I. PROCEDURAL AND FACTUAL BACKGROUND**

This is a breach-of-contract dispute between a supplier and non-exclusive dealers of construction equipment. Plaintiffs Cooper Equipment Co. ("Cooper") and Beard Holdings, LLC d/b/a Beard Equipment Co. ("Beard"), as well as Intervenor-Plaintiff B-C Equipment Sales, Inc. ("B-C") (collectively, "Plaintiffs"), are retail dealers of construction equipment. They allege that Defendant Hitachi Construction Machinery Americas Inc. ("HCMA"), a manufacturer of construction equipment, wrongfully terminated its materially identical Authorized Retail Dealer Agreements ("Dealer Agreements") with each Plaintiff in September 2023 after providing Plaintiffs substantially identical Termination Notices on March 10, 2026.[2]

Cooper and Beard commenced this action on January 17, 2024.[3] B-C filed an unopposed motion to intervene on June 21, 2024,[4] which was granted on July 11, 2024.[5] Plaintiffs assert three

[1] Dkt. No. 217.
[2] *See* Dkt. Nos. 88, 89 (2d Am. Compls.).
[3] Dkt. No. 1.
[4] Dkt. No. 12.
[5] Dkt. No. 15.

claims for relief: (1) statutory violations of the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act ("Dealers Act"); (2) breach of contract for wrongful termination under the Dealer Agreements; and (3) breach of contract in connection with HCMA's failure to allow Plaintiffs to sell excavators when HCMA began to manufacturer excavators after the Dealer Agreements went into effect.[6]

HCMA filed counterclaims against all Plaintiffs on November 11, 2024,[7] amended October 17, 2025,[8] alleging that Plaintiffs breached their respective Dealer Agreements first, when Plaintiffs failed to maintain contractually agreed-upon minimum annual market shares.[9]

On March 20, 2026, Cooper, Beard, and B-C filed a motion for partial summary judgment.[10] In their motion, Plaintiffs raised two arguments. First, Plaintiffs asserted that HCMA could not assert that it had statutory "good cause" to terminate the Dealers Agreements based on performance-objective/market-share grounds under § 57.154(a)(12) of the Dealer Act as a matter of law because it had failed to provide Plaintiffs with two years notice as required under § 57.155(b).[11] Second, Plaintiffs asserted that § 2.1(b) of the Dealer Agreements precluded HCMA from asserting contractual counterclaims against Plaintiffs for their alleged failure to maintain agreed-upon market-share rates as a matter of law.[12] HCMA timely responded,[13] and Plaintiffs timely filed a joint reply.[14]

Also on March 20, 2026, HCMA filed a motion for summary judgment as to all three Plaintiffs.[15] In its motion, HCMA argued, *inter alia*, that: (1) Plaintiffs' late-payment history under their security agreements with HMCA per se authorized HCMA to terminate the Dealer Agreements anytime thereafter under § 57.154(a)(7) the Dealer Agreement; (2) that HCMA's Termination Notices complied with the requirements set out in the Dealer Agreements and Dealer Act; and (3) that HCMA was entitled to summary judgment on Plaintiffs' breach-of-contract

---

[6] *See* Dkt. Nos. 88, 89 (2d Am. Compls.).
[7] *See* Dkt. Nos. 35, 36 (Original Countercls.).
[8] *See* Dkt. Nos. 93, 94 (Am. Countercls.).
[9] Dkt. Nos. 35, at ¶¶ 73–81; 36, at ¶¶ 69–75; 93, at ¶¶ 86–94; 94, at ¶¶ 82–88.
[10] Dkt. No. 161.
[11] Dkt. No. 161, at 8–9.
[12] Dkt. No. 161, at 9–10.
[13] Dkt. No. 176.
[14] Dkt. No. 182.
[15] Dkt. No. 163.

excavator claim because excavators were outside the scope of the contractual "Inventory."[16] Plaintiffs timely responded,[17] and HCMA timely filed a reply.[18]

Magistrate Judge Farrer entered a Report and Recommendation as to both Motions on July 20, 2026.[19] Therein, Magistrate Judge Farrer recommended that HCMA's motion be denied, and that Plaintiffs' motion be granted only as to Plaintiffs' challenge to HCMA's counterclaims based on the Dealers Agreements' express limitation of Hitachi's remedies for market-share-related breaches.[20] The Report and Recommendation further recommended that Plaintiffs should carry the burden of proof that HCMA lacked good cause to terminate its Dealer Agreements.[21]

The parties filed timely objections to the Magistrate Court's Report and Recommendation.[22]

In their objections, Plaintiffs assert that: (1) the Report and Recommendation erroneously placed the burden of proving absence of statutorily good cause on Plaintiffs; and (2) the Report and Recommendation erroneously declined to hold that HCMA is precluded from relying on market share/sales requirements as good cause because it failed to satisfy the two-year notice requirement statutorily required to invoke § 57.154(a)(12) of the Dealer Act.[23]

In its objections, HCMA asserts that: (1) the Report and Recommendation erred in concluding that cured payment defaults cannot constitute statutory good cause for termination under the Dealer Act; (2) the Report and Recommendation erroneously imposed notice requirements not found in the Dealer Agreements and failed to recognize that HCMA's written and email notices satisfied the applicable contractual requirements; and (3) the Report and Recommendation erred in finding that HCMA was not entitled to summary judgment on Plaintiffs' breach-of-contract claims relating to excavator sales as a matter of law.[24]

---

[16] Dkt. No. 163, at 9–19.
[17] Dkt. No. 177.
[18] Dkt. No. 184.
[19] Dkt. No. 217.
[20] Dkt. No. 217, at 9–22.
[21] Dkt. No. 217, at 9–11.
[22] Dkt. Nos. 224, 225.
[23] Dkt. No. 224, at 3–11.
[24] Dkt. No. 225, at 3–10.

## II. DISCUSSION

As to the portions of the Report and Recommendation to which the parties do not object, the Court has reviewed the Report and Recommendation for clear error pursuant to Federal Rule of Civil Procedure 72(b).[1] Having thus reviewed the record in this case, the parties' filings, and the applicable law, the Court finds no clear error or findings contrary to law and adopts these portions of the Report and Recommendation in their entirety.

As to the portions of the Report and Recommendation to which the parties have objected, the Court has conducted a de novo review pursuant to 28 U.S.C. § 636(b)(1)(C).[25] Following that review, the Court adopts the Magistrate Judge's findings and recommendations as to each of HCMA's three objections. HCMA's objections are therefore **OVERRULED**. However, Plaintiffs' objections warrant further discussion, as set forth below.

1. *Burden of Proving Absence of Statutory Good Cause*

Plaintiffs first contend that the Report and Recommendation erred by placing on them the burden to prove that HCMA lacked statutory good cause to terminate the Dealer Agreements under § 57.154 of the Dealers Act.[26]

The Court begins by observing that the Report and Recommendation adopts a framework for Dealer Act claims provided in *Hitachi Construction Machinery Americas Inc. v. Amarillo Machinery Company, et. al.*, a recent, nonbinding opinion from the Northern District of Texas.[27] There, the district court stated that "[a] successful Dealers Act claim requires four elements: (1) there was a covered dealer agreement; (2) that agreement was terminated; (3) termination occurred without good cause; and (4) damages resulted."[28]

The court in *Hitachi* did not explain its basis for identifying those four requirements as the elements of a Dealers Act claim,[29] and the Court finds nothing in the statute to support this proposed schema. The stated purpose of the Dealer Act is to "supplement[] . . . any dealer

---

[1] FED. R. CIV. P. 72(b) ("When no timely objection is filed, the [district] court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

[25] 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made."); *see also* FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

[26] Dkt. No. 224, at 3–7.

[27] 2:25-CV-00155-Z-BV, 2026 WL 1747874 (N.D. Tex. June 17, 2026).

[28] *Hitachi*, 2026 WL 1747874, at *4.

[29] *See id.*

agreements between the dealer and the supplier" by affording dealers certain nonwaivable protections and remedies.[30] Nothing in the statutory text suggests that a claim under a statute designed to supplement the parties' contractual relationship should be analyzed under elements materially different from those governing an ordinary breach-of-contract claim. Because the Dealers Act is intended to supplement, rather than wholly displace, a covered agreement, the Court concludes that Plaintiffs' Dealers Act claims are properly evaluated under the traditional breach-of-contract framework, subject to the Act's provisions. Accordingly, Plaintiffs must prove: (1) the existence of a valid, *covered* contract; (2) that Plaintiffs performed, or tendered performance, as required by the contract *and the Dealers Act*; (3) that Hitachi breached the contract, *as supplemented by the Dealers Act*, by failing to perform or tender performance as required; and (4) that Plaintiffs suffered damages proximately caused by that breach. [31]

The Court thus considers who should bear the burden of establishing whether HCMA had good cause to terminate the Dealer Agreements under this framework.

HCMA and the Report and Recommendation place substantial weight on the fact that, unlike "analogous" laws enacted in other states or laws governing other contractual relationships in Texas, the Dealers Act does not expressly assign the burden of proving good cause to the supplier.[32] HCMA contends that this relative silence "prohibit[s]" the Court from requiring HCMA to prove that it had statutory good cause to terminate the agreement under the principle of *casus omissus pro omisso habdenus est*.[33]

The Court is not persuaded by this argument. Although Texas courts appear to have only considered the question of who must demonstrate good cause in breach-of-contract disputes in the context of employment contracts, they consistently place the burden to establish good cause to terminate on the terminating party.[34] More generally, Texas contract law treats prior material

---

[30] TEX. BUS. & COMM. CODE § 57.402.
[31] See *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).
[32] Dkt. No. 163, at 9–11 (citing Wis. Stat. Ann. § 135.03 ("The burden of proving good cause is on the grantor); N.D. Cent. Code Ann. § 51-07-01.1(3) ("In any action against a manufacturer, wholesaler, or distributor for violation of this section, the manufacturer, wholesaler, or distributor shall establish that the termination, cancellation, or failure to renew was made in good faith for good cause."); *see also* Dkt. No. 217, at 10–11.
[33] Dkt. No. 163, at 10.
[34] *James C. Mastandrea v. Whitestone Reit*, No. 14-24-00924-CV, 2026 WL 2097237, at *4 (Tex. App. July 21, 2026) (citing *Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 578 (Tex. App.—Houston [1st Dist.] 1992, no writ)); *see also Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93 (Tex. App. Dallas 2009).

breach as an affirmative defense: a party invoking the other party's breach to excuse its own nonperformance bears the burden of proof.[35]

Section 57.154 of the Dealer Act identifies the circumstances constituting good cause for a supplier to terminate a dealer agreement, including a dealer's material breach, misconduct or financial impropriety, inability to operate responsibly, and persistent failure to meet reasonable performance requirements.[36] Absent good cause, a supplier "may not terminate" the agreement.[37] Thus, the Dealer Act's good-cause provisions function as mandatory, supplemental terms of the parties' agreements that permit a supplier to terminate, and thereby discontinue performance, only upon the occurrence of specified events and compliance with any applicable notice-and-cure requirements.

Against that backdrop, HCMA's reliance on good cause is, in substance, an assertion that it was excused from further performance under the Dealer Agreements because Plaintiffs' conduct supplied a statutory basis for early termination.[38] The Court finds that this assertion is materially indistinguishable from a prior-material-breach defense and sees no basis to conclude that the Legislature's failure to expressly allocate the burden of proof reflects an intent to deviate from the ordinary rule placing the burden on the party asserting such a defense. Any contrary conclusion would illogically allocate the burden of proof for the same termination, requiring HCMA to prove good cause as a defense to Plaintiffs' breach-of-contract claims while requiring Plaintiffs to prove the absence of good cause in support of their Dealers Act claims. Because HCMA invokes good cause to excuse what would otherwise constitute an impermissible termination, it should bear the burden of proof as to both claims.

Accordingly, Plaintiffs' objection as to the burden of proof is **SUSTAINED**. HCMA bears the burden of proof to establish that it had good cause to terminate the Dealer Agreements and that it complied with any applicable statutory notice-and-cure requirements.

2. *Defendant's Right to Invoke 57.154 as Good Cause to Terminate*

Plaintiffs next assert that the Magistrate Judge erred in declining to find that "Plaintiffs are entitled to judgment as a matter of law that the alleged defaults set forth in paragraphs 5 and 6 of

---

[35] *O'Brien's Response Mgmt., L.L.C. v. BP Expl. & Prod., Inc.*, 24 F.4th 422, 434 (5th Cir. 2022) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006)).

[36] *See* TEX. BUS. & COMM. CODE § 57.154(a)(1)–(12).

[37] TEX. BUS. & COMM. CODE § 57.153.

[38] Dkt. Nos. 93, at ¶ 71; 94, at ¶ 67. The Court observes, in passing, that HCMA styles its assertion that it had "good cause" to terminate Plaintiffs' Dealer Agreements as a defense in its operative pleadings.

[HCMA's] Termination Notices cannot serve as "good cause" for Termination under the [Dealer] Act."[39]

Section 57.154(a)(12) of the Dealer Act permits a supplier to terminate an agreement covered by the Dealer Act if:

> . . . the dealer has consistently failed to meet and maintain the supplier's requirements for reasonable standards and performance objectives, so long as the supplier has provided the dealer with reasonable standards and performance objectives based on the supplier's experience in other comparable markets."[40]

However, § 57.155(b) provides that:

> A supplier . . . may not terminate a dealer agreement for the reason stated in Section 57.154 (Good Cause Determination)(a)(12) unless the supplier gives the dealer notice *of the action at least two years* before the effective date of the termination.[41]

Plaintiffs assert that HCMA cannot invoke Plaintiffs' alleged failures "[to] maintain adequate product sales volumes or trends and service levels [or] satisfy market share requirements" as good cause for termination of the Dealer Agreements because HCMA failed to provide Plaintiffs with notice of its intent to terminate two years before terminating in September 2023.[42] Plaintiffs' argument relies on the assertion that HCMA "ultimately does not dispute that the operative notices of termination (i.e., "notice of the action") were the March 10, 2023 letters providing only 185/187 days' notice."[43] This is true as to Beard,[44] but inaccurate as to B-C and Cooper.

As Plaintiffs acknowledge in their objection and reply,[45] HCMA contends that it provided B-C and Cooper adequate and timely notice of their market-share deficiencies through a series of emails transmitting market-share reports in 2020 and 2021.[46] Plaintiffs therefore offer contradictory characterizations of HCMA's position on whether HCMA timely provided notice of its intent to terminate for good cause under § 57.154(a)(12).

---

[39] Dkt. Nos. 161, at 9; 224, at 7–10.
[40] TEX. BUS. & COMM. CODE § 57.154(a)(12).
[41] TEX. BUS. & COMM. CODE § 57.155(b).
[42] Dkt. No. 161, at 8–9.
[43] Dkt. Nos. 224, at 9 (citing Dkt. No. 182, at 6).
[44] *See* Dkt. No. 176, at 16–18.
[45] *See* Dkt. No. 224, at 9; 182, at ¶¶ 5–6.
[46] Dkt. Nos. 184, at 7–8.

Plaintiffs do not address the 2020–2021 emails in their motion for summary judgment.[47] In their response and objections, they assert briefly that the emails did not provide sufficient "notice of the action" to satisfy § 57.155(b)'s notice requirements.[48] Plaintiffs do not otherwise respond to HCMA's challenge to their interpretation of § 57.155(b) in the briefing currently before the Court.

Given this unresolved dispute, and for the same reasons set forth in the Report and Recommendation regarding the disputed adequacy of HCMA's March 10, 2023 termination notices,[49] the Court finds that Plaintiffs have not established that HCMA is precluded from asserting good cause to terminate its agreements with B-C and Cooper under § 57.154(a)(12).

Accordingly, Plaintiffs' objection is therefore **SUSTAINED IN PART** and **OVERRULED IN PART**. Plaintiffs' objection is **SUSTAINED** as to Plaintiff Beard. Because it is undisputed that HCMA did not provide Beard with the two years' notice required by § 57.155(b), the alleged market-share deficiencies identified in paragraphs 5 and 6 of Beard's termination notice cannot, as a matter of law, constitute good cause for termination under § 57.154(a)(12). Plaintiffs' objection is **OVERRULED** as to B-C and Cooper.

## III. Conclusion and Holding

Accordingly, the Court **ACCEPTS** the Magistrate Judge's recommendations **IN PART**. Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion is **GRANTED** with respect to Defendant Hitachi Construction Machinery Americas Inc.'s Counterclaim premised on a breach of § 2.1.(b) of the Dealer Agreements, and with respect to Defendant Hitachi Construction Machinery Americas Inc.'s invocation of § 57.154(a)(12) as a cause for its termination of its Dealer Agreement with Plaintiff Beard Holdings, LLC d/b/a Beard Equipment Co.

Defendant Hitachi Construction Machinery Americas Inc.'s Counterclaim is **DISMISSED**, and Defendant Hitachi Construction Machinery Americas Inc. is precluded from relying on the good-cause grounds invoked in Paragraphs 5 and 6 of its Termination Notices as to Beard Holdings, LLC d/b/a Beard Equipment Co. as a matter of law. Plaintiffs' Motion is otherwise

[47] *See* Dkt. No. 161, at 8–9.
[48] *See* Dkt. Nos. 161 at 8–9; 182, at ¶¶ 5–6; 224, at 9.
[49] *See* Dkt. No. 217, at 16–18.

**DENIED**. Defendant Hitachi Construction Machinery Americas Inc.'s Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED.

DONE this 17th day of August, 2026, in San Antonio, Texas.

M. Alvarez

MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE